## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SAP SE, BUSINESS OBJECTS SOFTWARE LTD. t/a SAP SOLUTIONS, and SYBASE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TRAYPORT LIMITED, <br><br> Defendant. | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs SAP SE ("SAP"), Business Objects Software Ltd. t/a SAP Solutions ("Business Objects"), and Sybase, Inc. ("Sybase") (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint for Patent Infringement against Trayport Limited ("Trayport" or "Defendant") allege as follows:

## NATURE OF THIS ACTION

1.     This is a civil action for the infringement of U.S. Patent Nos. 8,396,886 (the "'886 Patent"); 8,577,927 (the "'927 Patent"); and 9,009,354 (the "'354 Patent")  (collectively, the "Asserted Patents").

## PARTIES

2.     Plaintiff SAP SE is a corporation organized and existing under the laws of Germany that maintains an established place of business at Dietmar-Hopp-Allee 16, Walldorf, Germany, 69190.

3.     Plaintiff Business Objects Software Ltd. t/a SAP Solutions is a private company by limited shares in Ireland, with its principal place of business at Waterside 3, City West Business Campus, Dublin, 24 Ireland.  Business Objects is a subsidiary of SAP SE and SAP France.

4.      Plaintiff Sybase, Inc. is a Delaware corporation, with a principal place of business of 2700 Camino Ramon, Suite 400, San Ramon, California 94583.  Sybase, Inc. is a wholly owned subsidiary of SAP SE.

5.      Upon information and belief, Defendant Trayport Limited is a private limited company registered in England and Wales, with its registered office at 2 Gresham Street, 3rd Floor, London EC2V 7AD, United Kingdom.

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under an Act of Congress relating to patents).

7.      This Court has personal jurisdiction over Trayport.  Trayport conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this District, and elsewhere in the United States.

8.      Upon information and belief, this Court has specific jurisdiction over Trayport because (i) Trayport sells and/or licenses the infringing Accused Instrumentalities (as defined below) to at least one Chicago-based customer, IncubEx, Inc.; (ii) Trayport directs the infringing Accused Instrumentalities to both U.S.-based and, more specifically, Illinois-based customers including for example through its customer IncubEx, Inc., which then promotes the Accused Instrumentalities to customers in Illinois; and (iii) Trayport attends industry conferences in the Northern District of Illinois, including at least the 2022 and 2023 FIA Futures & Options EXPO in Chicago, at which it promoted, demonstrated, offered to sell, and/or sold the Accused Instrumentalities.

9.      The exercise of personal jurisdiction by this Court over Trayport is also appropriate because the dispute arises out of and has a substantial connection with Trayport's contacts with

this State and its infringement in this State. Upon information and belief in 2022, Trayport partnered with IncubEx to launch The Voluntary Climate Marketplace ("TVCM"), which incorporates and relies on Trayport's Joule—one of the infringing Accused Instrumentalities. IncubEx, Inc. has a principal place of business in Chicago, Illinois. Upon information and belief, Trayport has continued working with IncubEx at least since 2022, including selling or licensing the Accused Instrumentalities, such as Joule, to IncubEx for use with TVCM. In turn, IncubEx advertises TVCM and its use of the Accused Instrumentalities, such as Joule, to customers, including on information and belief customers in the Northern District of Illinois.

10.    Upon information and belief, Trayport intentionally targets Illinois in its efforts to sell or license the Accused Instrumentalities and is aware that its Accused Instrumentalities, such as Joule, reach Illinois. As a result, the Accused Instrumentalities have been and continue to be purchased, licensed, and/or used by Illinois-based consumers. Trayport's affirmative acts such as providing demonstrations of and information on the Accused Instrumentalities in person at conferences in Chicago, as well as providing all customers, including Illinois-based customers, with instruction manuals and tutorials for the Accused Instrumentalities have induced, continue to induce, and contribute to the infringement of the Asserted Patents by Defendant's partners, clients, customers, subscribers, and/or end users in Illinois. The Court's exercise of jurisdiction over Trayport would therefore be fair and reasonable.

11.    Venue is proper in this District because Trayport is a foreign corporation and venue is proper as to a foreign defendant in any district, 28 U.S.C. § 1391(c)(3), and because Trayport has committed acts of infringement, including selling and offering for sale the infringing Accused Instrumentalities in this District.

## PLAINTIFFS' LEADING TECHNOLOGY

12.     SAP, including its affiliates Business Objects and Sybase, Inc., is a global leader in enterprise applications and business Artificial Intelligence.  For over fifty years, Plaintiffs have been serving their customers by uniting business critical operations spanning finance, procurement, human resources, supply chain, and customer experience.  Plaintiffs have obtained numerous patents for their innovations from the United States Patent and Trademark Office.

13.     Plaintiffs serve a pivotal role in driving the evolution of the global business landscape by exploring and scaling emerging technologies in the business context, building upon the latest app developments, and enabling modern, cloud-native, more-compliant and more-secure software development practices, and providing a human-centric user experience across all devices.

14.     Plaintiffs' product and service innovations span a large variety of products and services, including those related to human capital management, extended planning and analysis, customer experience, and spend management for businesses.

## THE ASSERTED PATENTS

15.     The '886 Patent, titled "Continuous processing language for real-time data streams," was duly and lawfully issued on March 12, 2013.  Sybase, Inc. is the owner of all right, title, and interest in the '886 Patent, including the right to sue for past infringement.  The '886 Patent is valid and enforceable.  A true and correct copy of the '886 Patent is attached as Exhibit 1.  The '886 Patent is directed to a non-conventional technical solution to a technical problem, e.g., "a computer software language for expressing registered queries that operate on one . . . or more data streams continuously," which "may be used in a system where queries are registered with a server and execute continuously."  Ex. 1 at 3:32-36.

16.     The '927 Patent, titled "Producing a virtual database from data sources exhibiting heterogeneous schemas," was duly and lawfully issued on November 5, 2013.  Business Objects

is the owner of all right, title, and interest in the '927 Patent, including the right to sue for past infringement. The '927 Patent is valid and enforceable. A true and correct copy of the '927 Patent is attached as Exhibit 2. The '927 Patent is directed to a non-conventional technical solution to a technical problem, e.g., "the construction of virtual relational databases from heterogeneous sources" that "accommodates inconsistencies and contradictions within the heterogeneous sources … while providing enhanced flexibility and simplicity in the production of the virtual database." Ex. 2 at 3:27-32.

17.    The '354 Patent, titled "Services and management layer for diverse data connections," was duly and lawfully issued on April 14, 2015. SAP SE is the owner of all right, title, and interest in the '354 Patent, including the right to sue for past infringement. The '354 Patent is valid and enforceable. A true and correct copy of the '354 Patent is attached as Exhibit 3. The '354 Patent is directed to a non-conventional technical solution to a technical problem, e.g., providing a "common management layer … to provide one or more common services (e.g., error handling, monitoring, asynchronous handling, addressing, etc.) to data connections of diverse connectivity types that may be used or required by applications hosted on the computing platform." Ex. 3 at 4:15-20.

## TRAYPORT'S ACCUSED INSTRUMENTALITIES

18.    Upon information and belief, Defendant Trayport provides a network and data platform for wholesale energy markets, enabling its trader, broker and exchange clients to engage in multiple asset classes across over-the-counter (OTC) and cleared markets.

19.    Upon information and belief, Defendant Trayport is the seller and provider of Joule, Autotrader, Data Analytics, Automated Trading, Customer Portal, Tradesignal, Implied Price Calculator, Power Plant Management, Scheduling and Balancing, Internal Marketplace, Conformance Testing, Energy Market Access, GlobalVision Broker Trader System, GlobalVision

Exchange Trading System, Hosted Clearing Links, and Third Party Solutions ("Accused Instrumentalities") in the United States.

20.    Upon information and belief, one of Defendant's Accused Instrumentalities is Joule, a platform offering "an enhanced trading experience across multiple asset classes, OTC, cleared markets and geographies, and it's [sic] optimally configured desktop screen provides access to unique market views, facilitating a route to the liquidity for market participants to view all their venues aggregated into one stack."  https://www.trayport.com/traders/joule/trade-north-american-energy/.

21.    Upon information and belief, Defendant entered into a formal collaboration agreement with UpdataAnalytics to provide an integrated platform for Trayport's customers incorporating Trayport's Joule and UpdataAnalytics' Updata products, allowing mutual customers such as energy traders and brokers to access Updata's suite of charts analytics via links from within Trayport's Joule platform.

22.    Upon information and belief, Defendant controls the operation and integration of third party services, including Updata, into Defendant's software and platforms, including the Accused Instrumentalities. *See* https://www.trayport.com/third-party/.

23.    Upon information and belief, Trayport sells, licenses, offers to sell, and/or offers to license the Accused Instrumentalities, including Joule, to U.S. customers, including those in Illinois, and demonstrates the Accused Instrumentalities, including Joule, at industry events and conferences in the U.S.

## COUNT I
### (Direct Infringement of the '886 Patent)

24.    Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-23 of this Complaint.

25.     Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '886 Patent, including at least claim 1 of the '886 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in the United States, without authorization, the Accused Instrumentalities.

26.     For example, claim 1 of the '886 Patent recites "[a] computer-implemented method in a continuous processing system, comprising: subscribing to one or more continuous input data streams from one or more publishers of data streams, wherein each of the one or more continuous input data streams is published in a publisher-specific data representation format via a publisher-specific remote communication protocol; executing a query operation directly on the one or more continuous input data streams, including any windows of data within the one or more continuous input data streams, without any pre-processing of the continuous input data streams, including without storing the continuous input data streams in any data structure, prior to said executing, wherein the query operation is executed on a continuous basis; and publishing, in real time and on a continuous basis, a result of the query operation to one or more output data streams in a subscriber-specific data representation format via a subscriber-specific remote communication protocol as subscribed to by one or more subscribers, wherein the publisher-specific remote communication protocol varies from the subscriber-specific remote communication protocol."

27.     Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 1 of the '886 Patent for at least the reasons outlined in Appendix A attached.

28.     As a result of Defendant's infringement of the '886 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no

event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

29.     Defendant was made aware of the '886 Patent at least as early as the filing of this Complaint.

30.     Since at least the filing of this Complaint, when it was made aware of the '886 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT II
### (Indirect Infringement of the '886 Patent)

31.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-30 of this Complaint.

32.     Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

33.     Upon information and belief, Defendant has induced and continues to induce others to infringe the '886 Patent, including at least claim 1 of the '886 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '886 Patent. For example, Defendant advertises and has advertised the use of its trading platform across various industries. *See* https://www.trayport.com/traders/joule/.

34.     In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused

Instrumentalities in an infringing manner. *See* https://www.trayport.com/traders/joule/;

https://www.trayport.com/request-a-demo/; https://www.trayport.com/blog/energy-trading-using-

joule-remotely/ ("you'll be able to find a full Working From Home Guide with detailed

instructions for how to use each of our features within the Web Help"); Joule Direct User Guide,

Version 5, *available at* https://web.archive.org/web/20240405153724/https:/www.balkangashub.

bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

35.     After receiving actual notice of the '886 Patent at least as early as the filing of this

Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's

partners, clients, customers, subscribers, and/or end users to infringe the '886 Patent.

36.     Upon information and belief, Defendant has contributorily infringed and continues

to contributorily infringe the '886 Patent, including at least claim 1 of the '886 Patent, under 35

U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the infringing

functionality of the Accused Instrumentalities which is especially made or adapted for use in an

infringement of the '886 Patent, and which is not a staple article or commodity of commerce

suitable for substantial noninfringing use.

37.     As a result of Defendant's indirect infringement of the '886 Patent, Plaintiffs are

entitled to monetary damages in an amount adequate to compensate for Defendant's infringement,

but in no event less than a reasonable royalty for the use made of the invention by Defendant,

together with interest and costs fixed by the Court.

## COUNT III
(Direct Infringement of the '927 Patent)

38.     Plaintiffs incorporate by reference and re-allege each of the allegations in

Paragraphs 1-37 of this Complaint.

39.     Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '927 Patent, including at least claim 19 of the '927 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in the United States, without authorization, the Accused Instrumentalities.

40.     For example, claim 19 of the '927 Patent recites "[a] method for implementation by one or more data processors comprising: defining, by at least one data processor, an individual publication schema for each heterogeneous source of a plurality of heterogeneous sources, wherein each individual publication schema specifies mapping rules between data from a heterogeneous source and a non-permanent structured instance of data; generating, by at least one data processor, a non-permanent structured instance of data as defined by an individual publication schema; establishing, by at least one data processor, an integration schema defining a set of integration rules for combining data from each non-permanent structured instance of data as defined by individual publication schemas, the integration schema being used to analyze conflicts and further defining a source view based on a target schema that includes hidden attributes not used in a target schema; and forming, by at least one data processor, a target non-permanent structured instance of data to include data from the plurality of heterogeneous sources based on at least one integration schema."

41.     Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 19 of the '927 Patent for at least the reasons outlined in Appendix B attached.

42.     As a result of Defendant's infringement of the '927 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no

event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

43.     Defendant was made aware of the '927 Patent at least as early as the filing of this Complaint.

44.     Since at least the filing of this Complaint, when it was made aware of the '927 Patent, Defendant's infringement has been, and continues to be, willful.

**COUNT IV**
(Indirect Infringement of the '927 Patent)

45.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-44 of this Complaint.

46.     Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

47.     Upon information and belief, Defendant has induced and continues to induce others to infringe the '927 Patent, including at least claim 19 of the '927 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 19 of the '927 Patent.  For example, Defendant advertises and has advertised the use of its trading platform across various industries.  *See* https://www.trayport.com/traders/joule/.

48.     In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused

Instrumentalities in an infringing manner. *See* https://www.trayport.com/traders/joule/;

https://www.trayport.com/request-a-demo/; https://www.trayport.com/blog/energy-trading-using-

joule-remotely/ ("you'll be able to find a full Working From Home Guide with detailed

instructions for how to use each of our features within the Web Help"); Joule Direct User Guide,

Version 5, *available at* https://web.archive.org/web/20240405153724/https://www.balkangashub.

bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

49.     After receiving actual notice of the '927 Patent at least as early as the filing of this

Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's

partners, clients, customers, subscribers, and/or end users to infringe the '927 Patent.

50.     Upon information and belief, Defendant has contributorily infringed and continues

to contributorily infringe the '927 Patent, including at least claim 19 of the '927 Patent, under 35

U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the infringing

functionality of the Accused Instrumentalities which is especially made or adapted for use in an

infringement of the '927 Patent, and which is not a staple article or commodity of commerce

suitable for substantial noninfringing use.

51.     As a result of Defendant's indirect infringement of the '927 Patent, Plaintiffs are

entitled to monetary damages in an amount adequate to compensate for Defendant's infringement,

but in no event less than a reasonable royalty for the use made of the invention by Defendant,

together with interest and costs fixed by the Court.

## <u>COUNT V</u>
(Direct Infringement of the '354 Patent)

52.     Plaintiffs incorporate by reference and re-allege each of the allegations in

Paragraphs 1-51 of this Complaint.

53.    Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '354 Patent, including at least claim 11 of the '354 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in the United States, without authorization, the Accused Instrumentalities.

54.    For example, claim 11 of the '354 Patent recites "[a] method, comprising: providing, in a computing platform, a layer for management of diverse types of data connections for use by a software application launched on the computing platform, the data connections being independent of software application logic or coding; and providing a common entry point in the computing platform to receive data destined for external data receivers over the diverse types of data connections from the software application on the computing platform."

55.    Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 11 of the '354 Patent for at least the reasons outlined in Appendix C attached.

56.    As a result of Defendant's infringement of the '354 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

57.    Defendant was made aware of the '354 Patent at least as early as the filing of this Complaint.

58.    Since at least the filing of this Complaint., when it was made aware of the '354 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT VI
### (Indirect Infringement of the '354 Patent)

59.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-58 of this Complaint.

60.     Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

61.     Upon information and belief, Defendant has induced and continues to induce others to infringe the '354 Patent, including at least claim 11 of the '354 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 11 of the '354 Patent. For example, Defendant advertises and has advertised the use of its trading platform across various industries. *See* https://www.trayport.com/traders/joule/.

62.     In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities in an infringing manner. *See* https://www.trayport.com/traders/joule/; https://www.trayport.com/request-a-demo/; https://www.trayport.com/blog/energy-trading-using-joule-remotely/ ("you'll be able to find a full Working From Home Guide with detailed instructions for how to use each of our features within the Web Help"); Joule Direct User Guide, Version 5, *available at* https://web.archive.org/web/20240405153724/https://www.balkangashub.bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

63.     After receiving actual notice of the '354 Patent at least as early as the filing date of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '354 Patent.

64.     Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '354 Patent, including at least claim 11 of the '354 Patent, under 35 U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the infringing functionality of the Accused Instrumentalities which is especially made or adapted for use in an infringement of the '354 Patent, and which is not a staple article or commodity of commerce suitable for substantial noninfringing use.

65.     As a result of Defendant's indirect infringement of the '354 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgement in their favor and against Defendant, and respectfully request the following relief:

A.  A judgment in favor of Plaintiffs that Defendant has directly and/or indirectly infringed and is infringing, either literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patents;

B.  A judgment in favor of Plaintiffs that Defendant's infringement of the Asserted Patents has been willful, and that the Defendant's continued infringement of the Asserted Patents is willful;

C.  A judicial determination of the conditions for Defendant's future infringement, such as an ongoing royalty;

D.  A judgment and order requiring Defendant to pay Plaintiffs damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement;

E.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendant; and

F.  All other relief that the Court deems just and proper.

Dated: February 27, 2025

By: */s/ Jeffrey Bushofsky*

Jeffrey Bushofsky (IL Bar No. 6224593)
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
jeffrey.bushofsky@ropesgray.com

James R. Batchelder (*pro hac vice* to be filed)
James L. Davis, Jr. (IL Bar No. 6286015)
**ROPES & GRAY LLP**
525 University Avenue, 8th Floor
East Palo Alto, CA 94301
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
james.l.davis@ropesgray.com

Kathryn C. Thornton (*pro hac vice* to be filed)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue
N.W. Washington, D.C. 20006
Telephone: (202) 508-4600
kathryn.thornton@ropesgray.com

Abed Balbaky (*pro hac vice* to be filed)
Meredith Cox (*pro hac vice* to be filed)
**ROPES & GRAY LLP**
1211 Avenue of the America
New York, NY 10036
Telephone: (212) 596-9062
abed.balbaky@ropesgray.com

meredith.cox@ropesgray.com

*Attorneys for Plaintiffs*